[Crim. No. 4190.   Second Dist., Div. Three.   Mar. 8, 1948.]

THE PEOPLE, Respondent, v. WINIFRED HELEN BIANCO, Appellant.

Leola Buck Kellogg and Montgomery G. Rice for Appellant.

Fred N. Howser, Attorney General, and Ruth Bernfeld, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—Appellant was charged by information filed by the district attorney of Los Angeles County with three counts of grand theft and one count of attempted grand theft. The first count charged the theft of $600 from A. Speyer on or about November 25, 1946; the second count

charged the theft of $1,200 from Roy G. Kabat and Ruth M. Kabat on or about November 27, 1946; the third count charged an attempted theft of $3,600 from George E. Malcolm and Ethel M. Malcolm on or about December 2, 1946; and the fourth count charged the theft of $2,150 from Herbert L. Krause and Mollie Krause on or about December 3, 1946. Appellant pleaded not guilty, and upon trial by a jury was found not guilty on count one and guilty on the other three counts. Thereupon appellant moved for a new trial which motion was denied, and appellant was sentenced for the term prescribed by law as to counts two, three, and four, such sentences to run concurrently.

This appeal is from the judgments of conviction and order denying appellant's motion for a new trial, and is based upon the grounds of (1) insufficiency of evidence, (2) error in the admission of evidence as to a certain civil suit, and (3) error in the refusal to give several instructions concerning real estate law.

As will appear more fully hereafter, appellant paid $2,000 as a part of the purchase price of a three-bedroom dwelling house, on East 66th Street, in Los Angeles, was to make certain installment payments for four months, and then was to pay the remainder of the purchase price which would amount to something over $11,000; she then made successive leases of the property, receiving therefor certain sums as advance rental. She did not conclude her purchase of the property nor return to her lessees the sums received from them. Her defense is that she acted at all times in good faith.

Her agreement to purchase the property was entered into September 14, 1946. Prior to that time she had entered into an agreement to purchase another property in North Hollywood, which she had lived in for some months. The details of this purchase were not gone into but it appeared that appellant was making monthly payments on the purchase price. On October 6th, appellant agreed to lease the North Hollywood property to Mrs. Doris Edwards for two years at a rental of $125 per month, and upon the following day she received from Mrs. Edwards $3,000 rental paid in advance. Some two weeks thereafter, Mrs. Edwards went to the premises and found a sheriff's notice of execution of writ of possession; she thereupon contacted appellant, demanded the return of her money, and received from appellant a per-

sonal check for $3,000, which was dishonored when presented for payment. On October 18, appellant paid Mrs. Edwards $1,000, and gave her a $2,000 personal check and a promissory note; the check was dishonored by the bank. On December 3d or 4th, appellant paid Mrs. Edwards the balance of $2,000. Appellant's transactions with Mrs. Edwards were entirely aside from her later transactions in connection with the 66th Street property, but should be borne in mind in considering her operations in connection with the latter property.

In the latter part of August, 1946, Henry A. Herbst, then the owner of a three-bedroom house located at 1702 West 66th Street, Los Angeles, listed this property for sale with Sol Cowen, a real estate broker. Soon thereafter, appellant, using the name of Helen Massi, spoke to Mr. Cowen about this property and was told that the owner wanted a $5,000 down payment and that the purchase price was $13,750. She stated that she thought she could pay only $2,000 down and Mr. Cowen told her that he would speak to the owner about it. At that time she also gave Cowen, according to the latter's testimony, a personal check in the sum of $100 as deposit. Subsequently, during several meetings of appellant with Mr. Herbst and Mr. Cowen the parties agreed upon the following terms: Appellant was to pay the purchase price of $13,750 by making a $2,000 deposit, followed by four monthly installments of $100 beginning October 13. During these five months appellant was to arrange for a first mortgage on the property which she told Mr. Cowen and Mr. Herbst she could get in the amount of $9,500, or $8,500, and payment of the full balance of the purchase price was to be made by appellant at the end of the fifth month, i. e., on February 13, 1947. It was further agreed that the contract should be put in writing; but that it should not be recorded and that Herbst would not give appellant a deed until she paid $5,000 on the contract. Furthermore, according to the testimony of Mr. Herbst, there was an oral agreement that appellant was not to lease the property except to the extent of renting out rooms on a weekly basis. In that connection Mr. Herbst testified that when he told appellant that he did not want her to lease the property "she said definitely she would not lease it, that she had no intention of leasing it, that she wanted it for a home for her and the baby and that all she wanted to do was to make a little extra money to help her make the payment." He further testified that on November

27th, he called on appellant at 1702 West 66th Street and told her that he had heard that she was going to rent the property and told her that she could not do so because of their verbal agreement and that she replied that she was not planning to lease the property but merely wanted to rent out part of the house on a weekly basis.

On September 14, the parties signed a written contract for the sale of the property, which appellant signed by the name of Helen Massi. Among the provisions included in the contract was a clause making time of the essence and providing that: "... If the buyer fails to make any of the payments at the times and in the manner above provided, or fails to comply with any of the terms hereof on his part to be done or performed, then ... at the seller's option the buyer shall be deemed to have forfeited all rights hereunder and all right to the money theretofore paid upon this agreement, which money may be retained by the seller ...." Some time before October 10, appellant gave Mr. Cowen a cashier's check in the sum of $2,000 and took possession of the property. At the time of receiving the cashier's check, Mr. Cowen returned to appellant her check for $100 previously received as a deposit because it had not been honored by the bank by reason of insufficient funds. On October 10, an escrow with respect to the sale of the property was opened at the Security-First National Bank with escrow instructions signed by appellant and Mr. Herbst, upon appellant's request, extended the time of the first payment from October 13 to November 13. However, Herbst testified he did not waive the time of essence clause contained in the sales contract except as to this first payment. Appellant at no time made any payment on the property in addition to the first $2,000 and on December 2, Mr. Herbst served appellant with a 30-day notice of termination and forfeiture of the sales contract, a copy of which he mailed to her on December 3.

After taking possession of the property at 1702 West 66th Street, appellant leased, or attempted to lease, the premises to four different parties for terms ranging from one to three years, all of which terms were to commence at some time in December. Each lease and the advance rent collected thereon by appellant (or in one case, attempted to be collected) forms the basis of one count of grand theft herein.

In aid of our subsequent detailed statement of the evidence in support of the verdicts and judgment, we shall first

present the following chronological table of the pertinent transactions and events: Sept. 14, execution of contract for sale of property at 1702 West 66th Street; Oct. 3, taxes due; Oct. 10 (or earlier), $2,000 paid; Nov. 13, first $100 installment due; Nov. 25, Speyer lease (one year) executed, term to commence December 21st; Nov. 26, appellant receives $600 advance rent on Speyer lease; Nov. 27, Kabat lease (one year) executed. Appellant receives $1,200 advance rent; Dec. 1, Malcolm lease (three years) executed. Malcolms agree to pay $3,600 in advance rent on the next day; Dec. 2, (morning) Malcolms rescind lease; Dec. 2, (evening) Herbst serves appellant with notice of termination and forfeiture; Dec. 3, Herbst mails copy of notice of termination and forfeiture to appellant; Dec. 3, Krause lease (three years) and chattel mortgage executed. Appellant receives $2,150 from Krauses; Dec. 4 or 5, Krauses rescind lease; Dec. 5, taxes delinquent; Dec. 10, Kabats take possession; Dec. 10-21, at some time between these dates, Speyers rescind lease.

SPEYER LEASE. The advance rent obtained by appellant from the Speyers formed the basis of the grand theft charge of Count I of which appellant was acquitted. It will, therefore, not be necessary to relate this transaction except insofar as the conduct of appellant in connection therewith and the fact of the execution and existence of this lease have a bearing upon the other three counts of which appellant was convicted. The Speyers learned that the premises at 1702 West 66th Street, then occupied by appellant, were for rent through Mr. Duff, a real estate agent, whose office had received a call to that effect on November 20. Prior to contacting the Speyers, Mr. Duff had had a conversation with appellant in which she told him that she was ill and had to go to a sanitarium in Illinois and that she wanted to rent the property for $100 a month for one or two years, and wanted to get as much rent in advance as possible. Further, in answer to Mr. Duff's inquiry as to the ownership of the property, she told him that she was the owner of the property and that she owed about $4,000 on it. In the preliminary conversations with the Speyers, appellant told them that she needed the advance rent because she was ill and had to make a substantial payment to a sanitarium in Glendale and that she could not give them possession until about December 21, because she had to wind up her affairs and attend to certain business relating to her home.

The Speyers were desperately in need of housing and they agreed to rent the property for $100 a month on a one-year lease, $600 rent payable in advance, the term to begin December 21 "or sooner." The written lease embodying these terms was executed by the parties on November 25. The lease also contained a clause that "if the lease for any reason is terminated before expiration date, all moneys unused shall be returned to the lessee immediately." This provision was written in by appellant herself who at that time stated to the Speyers that she put it in "to show that she was on the level." At the time of the execution of the lease the Speyers gave appellant a check in the amount of $600 and the next day, on November 26, Mrs. Speyer cashed this check and handed appellant the money. A few days before the term of the lease was to commence, Mrs. Speyer went to the premises and found them occupied by Mr. and Mrs. Kabat who showed her a one-year lease dated the 27th of November between them and appellant. Thereupon Mrs. Speyer called appellant and told her that appellant had gotten the money under false pretenses and that she wanted it back, to which appellant did not reply except to agree to meet with the Speyers. At that meeting, which took place at the office of appellant's attorney, appellant promised to pay back the money but stated that she would have to telegraph home for it and stated that Mr. Elowitt (her attorney) was holding certain jewelry of the value of $1,100 for his fee, and that she would give these jewels to the Speyers until she could pay the $600, which she promised would be in a few days. Subsequently an agreement to that effect was executed by the parties and the Speyers were given the jewelry. However, its value was appraised as being only $400 by one jeweler, and as being worth no more than $100 by another. In spite of frequent demands for the money, the Speyers did not get their money back, and at the time of the trial, were still holding the jewelry.

Kabat Lease. Mr. Kabat first met appellant on November 25, when he went to the premises at 1702 West 66th Street in response to a telephone call from appellant in which the latter had inquired whether it was true that he was looking for a piece of property, and offered to lease the 66th Street property. In the preliminary conversations with respect to the lease of these premises, appellant repeatedly stated that she was the owner of the property and had clear title to it; that she had

owned the property for about a year and that she had a right to lease it. At that time the Kabats were desperately in need of housing (Mr. Kabat was sleeping in his car and his wife and new baby had just gotten out of the hospital), and Mr. Kabat agreed to lease the property for $100 a month for one year, the full rental payable in advance, appellant having told him that she needed the money because she was ill and had to make arrangements to take care of her son before she could get medical attention, and that she was going to the Mayo Clinic in Minnesota.

The written lease which was executed by the parties on November 27, contained a clause respecting a possible termination similar to that contained in the Speyer lease and this provision was added upon appellant's suggestion. On the date the lease was executed the Kabats gave appellant a check in the sum of $1,200 and took possession of the premises on December 10. Thereafter a lawsuit was commenced against them by Mr. Herbst relating to the property in which Mr. Kabat filed an answer. This suit was an action to determine the interests of the various parties in the property and also named appellant as one of the defendants. The complaint was served on appellant on December 13; however, no answer was filed on her behalf and a default was entered as against her.

Mr. Kabat testified that when he paid the $1,200 to appellant he believed that she had a right to lease the property for one year, and that he would not have signed the lease if he had known that on November 25 appellant had leased the same property to the Speyers for approximately the same period of time and had received $600 rent in advance thereon.

MALCOLM LEASE. Mrs. Malcolm first contacted appellant on December 1, in answer to an advertisement in the "Southwest Ways" which stated that "cash was urgently needed and that the person advertising would lease her six-room house in exchange for a loan." The Malcolms were going to be in need of a home shortly and they agreed to pay appellant $3,600, being three years' rental, at the agreed price of $100 per month, and it was further agreed that at the end of two years the Malcolms were to have an option to terminate the lease and have the last year's rental refunded, or if rents had come down, to have three and one-half years to absorb the three years rental. In the preliminary conversation, appellant told Mr. and Mrs. Malcolm that she had owned the property for about a year, had lived there for that length of time, and that she needed the advance rent because she had an operation coming

up and was taking her child east, and that she also had some bills to settle.

The lease was drawn and the Malcolms agreed to meet appellant the next morning at the bank and to pay her $3,600. At that time they fully intended to do so, and to go ahead with the lease; however, before that time Mr. Malcolm investigated the ownership of the property, and also spoke to Mr. Herbst, who informed him that appellant had opened an escrow on the property but that so far the terms had not been carried out. Malcolms did not keep their appointment with appellant and did not pay her the money.

KRAUSE LEASE. On December 2, 1946 appellant telephoned Mrs. Krause in answer to the latter's advertisement for a house to rent. Mr. and Mrs. Krause met appellant that night in the latter's home on 66th Street and discussed their leasing the premises. Appellant stated that she wanted to rent the house for $100 a month on a three-year lease, the full rent payable in advance, stating that she needed the money for an operation and that she also had a sick child and was trying to get him to Baltimore. The Krauses did not want to give appellant the full $3,600 without some security, and it was agreed that $1,800 of this sum would be considered as rent and the balance as a loan, to be secured by a chattel mortgage on appellant's furniture in the house. Questioned whether she was the owner, appellant replied that she was, and thereupon the Krauses gave appellant a $20 check as a binder and the parties agreed to meet the next morning when the lease and chattel mortgage were to be executed and the Krauses were to give the money to appellant. The next morning, i.e., on December 3, the parties met and the Krauses questioned again whether appellant owned the property; she again replied that she did and that she had free and clear title, except that she still owed a small debt on it, about one or two thousand dollars on which she was making $20 monthly payments. On that morning, in the presence of a Mr. Cooper, who had accompanied appellant, the parties executed the three-year lease and the chattel mortgage on certain furniture listed by appellant. Thereupon Mr. Krause handed appellant a cashier's check in the sum of $2,150 with the understanding that he would pay appellant the balance of the $3,600 within a few days.

Thereafter the Krauses had the title to the property searched and also had a conversation with Mr. Herbst, whom they found from the records to be the owner, in which conversation

the latter told them that he had sold the property to appellant but that she had defaulted and that he had sent her a 30-day notice that her interest was terminated. The Krauses further found out that there was an attachment on the furniture to which appellant had given them a chattel mortgage. In that connection Mr. Lyon, manager of the Seaboard Finance Company, testified that on July 26, 1946 appellant had executed a promissory note in the sum of $5,500 which was secured by a chattel mortgage on certain enumerated furniture which at that time was at 10918 Bloomfield Street, North Hollywood, but was later moved to 1702 West 66th Street; that this note had never been paid off and was in effect on December 5, 1946.

Late in the evening of December 4, the Krauses called on appellant and told her what they had found out about the title and the furniture and demanded the return of their money. Appellant replied that she had given the check to a certain John Sheppard who had cashed it and had taken $150 out of it and turned $2,000 over to her attorney, Mr. Elowitt; further that she had gotten into trouble and needed $2,000, but would get the money back for the Krauses. However, she did not repay the money.

Mrs. Krause further testified that if she had known that appellant was not the owner of the property and not in a position to give a year's lease she would not have given her the money, and that likewise, she would not have given appellant this money if she had known that the property had been leased to other persons before and that the leases had not been cancelled.

On December 5, Officer Workman, a police officer, had a conversation with appellant in the presence of Mrs. Krause. At that time Mrs. Krause told him of appellant having leased the same property two or three times, to which appellant merely stated that there had been a misunderstanding and that she would get the money back to the Krauses, but that she would have to send to Catalina Island for it and therefore would not be able to return the money until that afternoon.

Appellant admitted the execution of the various leases and receipt of advance rent thereunder; she denied that there was an oral agreement with Mr. Herbst not to lease the premises, and when questioned as to certain items listed in both chattel mortgages, stated that she owned two sets of these items and that the set covered in the Seaboard Finance Company's mortgage was at the time of the trial at 10909 Bloomfield Street, North Hollywood. She further testified that she in-

tended to give the Speyers and Kabats their money back and terminate their leases, and give the Malcolms possession if they had gone through with their lease. She admitted not having told the subsequent lessees of the prior leases and that by December 3, she had not spoken to either the Speyers or the Kabats that she was going to cancel their leases and lease the premises to the Krauses. She further stated that she had not returned the money to the Krauses because, ''. . . You don't pick money out of trees either; you have got to have time to get the money together and if people don't want to give it to you there is nothing you can do.'' She further testified that at the time of executing the leases she had not been ill and denied having made the statements testified to by all the lessees as to her illness and contemplated operation and trip east. Appellant further admitted that on December 2 Mr. Herbst personally gave her a notice of termination and told her that he would give her 30 days' written notice of it, but she testified that at that time, she offered to pay the installment. Mr. Herbst denied that appellant had made such offer.

The foregoing statement of the evidence establishes its sufficiency to support the verdicts. Appellant entered upon her machinations to defraud the complainants with an obligation to refund to Mrs. Edwards a balance of $2,000 which had been obtained from her by the same sort of a scheme. She did return this sum to Mrs. Edwards and she used none of the $3,950 which she received from her lessees to reimburse them or to complete her purchase of the property. Her actions throughout furnished the best guide to her intentions. Her frauds were the most wicked because she took advantage of the pressing necessities of her lessees.

Appellant complains of an instruction given at the request of the People to the effect that a purchaser of real property under contract may in good faith lease it, yet if default is made by the purchaser the tenant's rights are thereby rendered void. It is contended that the instruction stated the law incorrectly and that the court should have given instead several of defendant's requested instructions respecting the civil rights of the parties in interest.

The instruction that was given was not a correct statement of the law, but we do not regard it as a serious matter. Defendant's requested instructions related to such matters as the legal right of a purchaser under contract to lease the property, the right of the tenant to remain in possession

until the contract of purchase is rescinded by the parties or the lease is terminated by act of the parties, the right of a lessor to terminate a lease if it gives him that right and thereafter to make a new lease, that the questions of the right of the tenant to a refund in case of termination of the lease is for the civil courts, that a contract for the purchase of real property may be rescinded for cause but that the contract remains in force until terminated by suit in equity, and that a purchaser under contract has a legal right to retain and use any money received as rent of the premises even though he has not paid the purchase price. The requested instructions omitted the element of good faith in the exercise of the rights which were defined in the instructions. They emphasized the civil rights of defendant, which were not in issue, and if given would have diverted the minds of the jurors from the question of criminal intent. The charges lodged against defendant did not accuse her of acts illegal in themselves but only of committing the described acts with the intention of defrauding the complainants. There was no question as to her right to lease the property, as long as she acted in good faith, and did not deceive her lessees. It was not necessary to instruct as to the civil rights of defendant or her lessees. The jury would have understood that those rights necessarily depended upon compliance by defendant with her contract of purchase. The word "void" was ineptly used in the instruction that was given, but an instruction that breach of the contract of purchase by defendant would have given Herbst the right to terminate it and to recover possession from defendant and her lessees, while legally unobjectionable, would have been equally unwelcome to defendant. Needless to say, she did not propose such an instruction. As we say, defendant's right to make one or more leases in good faith and without misrepresentation was not in question. ▉ Money may be obtained by false pretenses through acts otherwise legal, as well as by those that are illegal.

▉ Another point urged by appellant is that the court admitted, over her objection, proof of an action brought by Herbst to terminate the contract of sale and to recover possession of the property. This was but circumstantial evidence of a cumulative nature that defendant had defaulted in her purchase contract, but as she did not make any claim that she had performed it, and as Herbst admittedly had declared her in default, it was quite immaterial whether he had brought suit. But the claim of error in this respect is unavailable to

defendant, inasmuch as she was the first one to place in evidence the fact that suit had been brought. She did not offer the court file in evidence, but she did prove by Herbst that suit had been instituted by him against defendant and others.

The verdicts of guilty were fully warranted by the evidence. In fact, in judging as to the honesty of defendant's intentions by weighing her actions against her protestations of good faith, the jury could not reasonably have reached any other conclusions.

The judgments and the order denying defendant's motion for new trial are affirmed.

Wood, J., and Vallée, J. pro tem., concurred.